| | | |
|---|---|---|
| **DAWN WOODARD** | ) | |
| | ) | **Case No. 3:25-cv-01174** |
| **v.** | ) | **Magistrate Judge Hill** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |

## MEMORANDUM OPINION

Plaintiff Dawn Woodard filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 10) and supporting memorandum (Docket No. 11), to which Defendant SSA responded (Docket No. 14) and Plaintiff replied (Docket No. 15). The parties have consented to entry of final judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit. (Docket No. 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 10) is **DENIED**. For the reasons stated herein, the Court **AFFIRMS** the decision of the SSA.

## I.     INTRODUCTION

On March 8, 2023, Plaintiff filed an application for DIB. (Transcript of the Administrative Record (Docket No. 6) at 18).[1] In her application, Plaintiff asserted that, as of the alleged onset date of August 25, 2022, she was disabled and unable to work due to the following physical or

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

mental conditions: traumatic brain injury, migraines, mood swings, dizziness, balance problems, attention deficit disorder, insomnia, and anxiety. (AR 291.)

Her claim was denied initially on November 14, 2023, and upon reconsideration on April 12, 2024. (AR 85–112.) Administrative Law Judge ("ALJ") Gary Suttles held a hearing on September 20, 2024, at which Plaintiff appeared with counsel and testified. (AR 38–77.) On October 2, 2024, the ALJ denied Plaintiff's claim. (AR 18–31.) On August 25, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (AR 1–6.) Plaintiff then timely commenced this civil action pursuant to 42 U.S.C. § 405(g). (Docket No. 1.)

## II.     THE ALJ'S FINDINGS

The ALJ included the following enumerated findings in the October 2, 2024 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2028.

2.  The claimant has not engaged in substantial gainful activity since she August 25, 2022, the alleged onset date of disability (20 CFR 404.1571 et seq.).

3.  The claimant has the following severe impairments: migraines, traumatic brain injury with concussion, depressive, somatic symptom and attention deficit hyperactivity disorders (ADHD) (20 CFR 404.15(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in section 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), she can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can sit, stand and walk six of eight hours each for a full eight-hour day; she is unlimited in her ability to push/pull and in her gross/fine dexterity; she can occasionally climb stairs but never climb ladders or run; she can bend, stoop, crouch, balance, twist and squat; she can tolerate occasional exposure to excessive heat/humidity, bright lights, heights and dangerous machinery; she can understand simple instructions, concentrate to perform simple tasks, and respond/adapt to workplace changes and supervision.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 22, 1980, and was 42 years old, which is defined as a younger individual (ages 18-49) on the alleged disability onset date. As of the date of the decision, the claimant remains categorized as a younger individual (20 CFR 404.1563).

8. The claimant has a high school education with a general equivalency diploma (GED) (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 25, 2022, through the date of this decision (20 CFR 404.1520(g)).

(AR 20–31.)

## III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*,

109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id.* First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions

4

of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B.      Plaintiff's Assertion of Error**

Plaintiff asserts that the ALJ erred at step three by not finding that her migraines met or equaled the severity of Listing 11.02B pursuant to Social Security Regulation ("SSR") 19-4p. (Docket No. 11 at 8–15.) When an ALJ finds that a claimant has a severe impairment at step two, the ALJ must then consider whether that severe impairment either meets or medically equals certain listings at step three. These "listings" are found in 20 C.F.R. Part 404, Subpart P, Appendix 1. To "meet" a listing, all the criteria and the duration requirement of that exact listing must be satisfied. 20 C.F.R. §§ 404.1525(c)(1)–(3).

To "medically equal" a listing, the impairment must be "at least equal in severity and duration" to a listing. *Id.* § 404.1526(a). Medical equivalence can be found in three ways: (1) a claimant has a listed impairment, does not exhibit all of the findings or the requisite level of severity in the relevant findings, but the other impairment-related findings are "at least of equal medical significance to the required criteria"; (2) a claimant has a non-listed impairment that is of "at least equal medical significance" to a listed impairment; or (3) the claimant has multiple impairments that in totality are of "at least of equal medical significance" to a listed impairment. *Cynthia W. v. Comm'r of Soc. Sec.*, No. 3:23-CV-00559-CHL, 2025 WL 791637, at *4–5 (W.D. Ky. Mar. 12, 2025) (citing 20 C.F.R. at § 404.1526(b)).

At step three, the ALJ is not required to "articulate, at length, the analysis of the medical equivalency issue." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (citing 20 C.F.R.

§ 404.1526). Instead, the "ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'" *Id.* If the ALJ believes that an impairment does not medically equal a listing, the ALJ "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 82 Fed. Reg. 15263, 15265 (Mar. 27, 2017). Instead, a "statement" that the "impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* In other words, there is not a "heightened articulation standard" when the ALJ's findings are supported by substantial evidence. *Bledsoe*, 165 F. App'x at 411.

Instead, the ALJ's decision, when read as a whole, must "provide a sufficient explanation for a court to determine the basis for [an] unfavorable finding about medical equivalence." *Cynthia W.*, 2025 WL 791637, at *5 (quoting *Jandt v. Saul*, No. 1:20-CV-00045-HBB, 2021 WL 467200, at *9 (W.D. Ky. Feb. 9, 2021)). *See also* SSR 17-2p, 82 Fed. Reg. at 15265 ("An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.").

With respect to migraines specifically, the most analogous listing for determining medical equivalence is Listing 11.02 for epilepsy. SSR 19-4p, 84 Fed. Reg. at 44671. Listing 11.02 provides four ways to demonstrate epilepsy, though Plaintiff's arguments are focused on only one: "Dyscognitive seizures" as set forth in Paragraph B.

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying

6

symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* at 44671.

Plaintiff contends that the ALJ failed to "engage in any meaningful discussion" about why her impairment did not medically equal Listing 11.02, which, she argues, leaves the Court unable to review the decision and determine if it is supported by substantial evidence. (Docket No. 11 at 10.) Plaintiff points to a number of records that she believes indicate that her migraines are medically equivalent to Listing 11.02B, or at least raise a substantial question about the issue. (*Id.* at 11–12.) Although Plaintiff's migraines are not "dyscognitive seizures," she points to records indicating that her migraines may cause symptoms that are the medical equivalent to "alteration of consciousness" involved in dyscognitive seizures. *See* Listing 11.02H1b, 20 C.F.R. Pt. 404, Subpt. P, App. 1. For example, the records that she cites demonstrate that her migraines may be triggered by photophobia, phonophobia, and stress, and that her migraines lead to neck stiffness, tingling, dizziness, and nausea. (AR 698, 734, 978, 1099.) Plaintiff also cites to records indicating that the frequency of her seizures may meet Listing 11.02B's requirement that the seizures occur at least once a week for at least three consecutive months despite adherence to prescribed treatment. (AR 404, 698–99, 733, 746, 985, 978, 995, 1099, 1127, 1129, 1214, 1217.)

In response, the SSA argues that the ALJ's step three analysis was supported by substantial evidence. (Docket No. 14 at 5.) The SSA contends that the ALJ "is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis.'" (*Id.* (quoting *Bledsoe*, 165 F. App'x at 411).) The SSA argues

7

that the ALJ properly considered Plaintiff's allegations concerning her migraines and her treatment for those migraines when determining Plaintiff's RFC. (*Id.* at 6.) With respect to the medical records cited by Plaintiff in her brief, the SSA asserts that the state agency medical consultants considered the same evidence and found that Plaintiff did not equal the listing. (*Id.* at 7.) The SSA also notes that the record does not contain a medical opinion indicating that Plaintiff equaled a listing-level impairment, which it argues is required under SSR 17-2p. (*Id.* at 7–8 (citing *Willis v. Comm'r of Soc. Sec.*, No. 5:24-CV-01503-DCN, 2025 WL 20552270, at \*13–14 (N.D. Ohio July 23, 2025) ("[T]he ALJ was precluded from finding medical equivalency in the absence of a similar finding made by a state agency consultant at the initial or reconsideration level or a medical expert at the hearing level.").)

As detailed above, this Court does not recognize a heightened articulation standard for step three determinations. *See Bledsoe*, 165 F. App'x at 411. Here, the ALJ analyzed Plaintiff's medical records and inquired about her daily activities, which he then discussed in detail. The ALJ then made specific factual findings to support the conclusion that Plaintiff's migraine headaches are not equivalent to Listing 11.02. *See Bear v. Bisignano*, No. 2:25-cv-00001, 2025 WL 1669349, at \*8 (M.D. Tenn. Jun. 12, 2025) ("The ALJ appropriately considered the medical evidence regarding Plaintiff's migraine headaches and related symptoms and determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.").

Specifically, the ALJ referenced Plaintiff's migraines throughout the decision. In his step three analysis, the ALJ concluded that the "frequency and severity of the claimant's migraines do not medically equal the criteria of listing 11.02 (epilepsy)." (AR 23.) The ALJ found that Plaintiff was moderately limited in her ability to understand, remember, or apply information, and discussed

her testimony that she experienced anxiety related to her migraines. (AR 23.) The ALJ also found that Plaintiff was mildly limited in her ability to interact with others and to adapt or manage herself, and was moderately limited in her ability to concentrate, persist, or maintain pace. (AR 23–24.) He made these determinations after considering her testimony, consultative examinations, and medical records that addressed her activities of daily living and cognitive abilities.

When analyzing Plaintiff's RFC, the ALJ discussed Plaintiff's migraines, including both her testimony and the medical record evidence. According to the ALJ, Plaintiff testified that she has headaches "all the time" and her migraines have "worsened" since a motor vehicle accident in 2018. (AR 25.) Her migraine symptoms include nausea, blurred vision, and confusion, and she must lie down in a dark room when she has migraines. (AR 26.) She "indicated that her neurologist informed her that testing showed no neurocognitive disorder related to brain injury, but she asserted that the results are not conclusive because she had difficulty with testing." (AR 26.) She has at least three migraines per week that last the entire day, and her last migraine occurred the evening before the hearing. (AR 25–26.) The ALJ noted that Plaintiff takes a prescribed medication, but that she testified that she does not take the medication on a daily basis due to weight gain. (AR 25.) Plaintiff also testified that the prescribed medication does not work, and that Botox injections caused an allergic reaction and worsened her headaches. (AR 25.) The ALJ also noted that "treatment records document [Plaintiff's] continuing treatment for migraines," which are "generally controlled with routine visits with her medical providers, and the use of medication, including the use of Nurtec as needed." (AR 27.) Accordingly, based on this and other evidence, the ALJ limited Plaintiff's RFC to medium work and occasional exposure to bright lights.

For these reasons, the Court finds that the ALJ did not err in his evaluation of Plaintiff's migraines at step three of the five-step sequential evaluation process. The ALJ properly evaluated

9

the medical evidence of record concerning Plaintiff's migraines and discussed this evaluation throughout his decision. This analysis and discussion meets the articulation standard for medical equivalence at step three. *See Bledsoe*, 165 F. App'x at 411. Accordingly, the Court rejects Plaintiff's assertion of error.

## V. CONCLUSION

For the above stated reasons Plaintiff's motion for judgment on the administrative record (Docket No. 10) is **DENIED** and the Social Security Administration's decision is **AFFIRMED.**

An appropriate Order will accompany this memorandum opinion.


_____
LYNDA M. HILL
United States Magistrate Judge

10